COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
          Bray, Annunziata, Bumgardner, Frank, Humphreys and
          Clements
Argued at Richmond, Virginia


ANTHONY KEARNEY
                                              OPINION BY
v.    Record No. 0080-99-1         JUDGE RUDOLPH BUMGARDNER, III
                                            JULY 10, 2001
COMMONWEALTH OF VIRGINIA


                   UPON A REHEARING EN BANC

          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Jerome James, Judge

          Robert E. Kowalsky, Jr., for appellant.

          Richard B. Smith, Senior Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          briefs), for appellee.


     A jury convicted Anthony Kearney of second degree murder

and use of a firearm in the commission of a felony.  A divided

panel of this Court reversed and remanded the murder charge for

re-sentencing but affirmed the conviction for use of a firearm.

Kearney v. Commonwealth, 32 Va. App. 790, 531 S.E.2d 23 (2000).

We granted the Commonwealth a hearing en banc and stayed the

mandate of the panel decision.  Upon rehearing, we affirm the

trial court and vacate the mandate and opinion of the panel.

     The defendant and Maurice "Noodles" Frances argued in the

parking lot of a convenience store.  The defendant and his

companions left but later returned to the area looking for

Noodles.  One of the group recognized someone in a car stopped at a stop sign as having been with Noodles earlier.  The defendant and another person shot at the vehicle and killed a passenger.  Two of the defendant's companions testified the defendant had fired at the victim's car.

The defendant did not testify during the guilt phase of his trial but did during the sentencing phase.  Defense counsel asked, "[O]n the day of the shooting, were you at all aware that people were going to pull out guns and start shooting?"  The Commonwealth objected, a bench conference followed, and the trial court sustained the objection.  Defense counsel stated, "Judge, I don't really have anymore questions."  The defendant made no proffer of his answer.

The sole issue is whether the trial court erred in sustaining the objection to the question posed to the defendant during the sentencing phase of his bifurcated jury trial.  The defendant may present mitigating evidence, which tends to explain, but not excuse, the crime.  Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 236 (1999).  He may not argue or present evidence of "residual doubt" at the sentencing phase of the trial.  Atkins v. Commonwealth, 260 Va. 375, 381, 534 S.E.2d 312, 316 (2000) (citing Stockton v. Commonwealth, 241 Va. 192, 211, 402 S.E.2d 196, 207, cert. denied, 502 U.S. 902 (1991)), petition for cert. filed, (Feb. 1, 2001) (No. 00-8452).

Defense counsel made no proffer of the defendant's anticipated testimony or the evidence he wished to present. Failure to make such a proffer precludes appellate review of this claim.  Spencer v. Commonwealth, 238 Va. 563, 570, 385 S.E.2d 850, 854 (1989), cert. denied, 493 U.S. 1093 (1990).  The defendant concedes he made no proffer but maintains a proffer was not necessary because the answer was apparent from the question.  As stated in O'Dell v. Commonwealth, 234 Va. 672, 697, 364 S.E.2d 491, 505, cert. denied, 488 U.S. 871 (1988), "[w]e will not speculate what the [questions and] answer[s] might have been."

The defendant also maintains his allocution sufficed as a proffer,[1] but his allocution followed submission of the case to the jury.  We consider the proffer as made to the trial court before the jury retired.  Shifflett, 257 Va. at 45, 510 S.E.2d at 237.

The question posed to the defendant could have elicited either mitigating or excusing evidence.  The defendant made no proffer to clarify his question or his purpose.  Without such a timely proffer, we cannot say the trial court clearly abused its discretion in sustaining the objection to the question posed.

---

[1] At the post-trial sentencing before the trial court imposed judgment, the defendant took the stand to testify. Then, he invoked the Fifth Amendment and did not testify other than to say he was innocent.  The allocution followed but was not under oath or subject to cross-examination and primarily denied guilt.

"[A] trial court's discretionary ruling on this issue should not be disturbed on appeal absent a clear abuse of discretion."  <u>Id.</u> at 44, 510 S.E.2d at 237 (citation omitted).  Accordingly, we affirm the trial court.

<u>Affirmed.</u>

Benton, J., dissenting.

At the guilt phase of the trial, the trial judge's instructions to the jury included the following:

> A principal in the second degree is a person who is present, aiding, and abetting, by helping in some way in the commission of the crime. . . .
>
> \*       \*       \*       \*       \*       \*       \*
>
> If there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.
>
> \*       \*       \*       \*       \*       \*       \*
>
> One who does not hold or possess a firearm during the commission of a felony may nevertheless be convicted as a principal in the second degree of use of a firearm in the commission of a felony where he acted in concert with the gunman.

The jury acquitted Anthony Kearney of the charge of first degree murder, which would have required a finding of premeditation, but convicted him of second degree murder. In view of the instructions, the conviction of second degree murder was not dependent upon the jury finding that Kearney knew the killer was armed. That verdict could have been premised upon the jury believing testimony that Kearney did not have a gun and, yet, finding him guilty because he aided and abetted or acted in concert with the actual killer.

At the punishment phase, the trial judge sustained the

Commonwealth's objection to the following question:

> Q:  Mr. Kearney, on the day of the shooting,
> were you at all aware that people were going
> to pull out guns and start shooting?
>
> [PROSECUTOR]:  Objection, Your Honor.  Could
> we approach, Judge?
>
> *        *        *        *        *        *        *
>
> THE [JUDGE]:  The objection to that question
> is sustained.  I'll note the defendant's
> exception.

I believe the question was permissible because it sought to

elicit relevant testimony.

In pertinent part, Code § 19.2-295.1 provides as follows:

> In cases of trial by jury, upon a finding
> that the defendant is guilty of a felony, a
> separate proceeding limited to the
> ascertainment of punishment shall be held as
> soon as practicable before the same jury.
> . . .  After the Commonwealth has introduced
> such evidence of prior convictions, or if no
> such evidence is introduced, the defendant
> may introduce relevant, admissible evidence
> related to punishment.

The trial judge, "in determining what evidence is relevant

to punishment under Code § 19.2-295.1[,] may be guided in the

exercise of . . . discretion, subject to the rules of evidence

governing admissibility, by the factors set forth in Code

§ 19.2-264.4(B)."  Commonwealth v. Shifflett, 257 Va. 34, 44,

510 S.E.2d 232, 236 (1999).  Under that statute, evidence

relevant to sentencing "may include the circumstances

surrounding the offense, the history and background of the

defendant, and any other facts in mitigation of the offense."
Code § 19.2-264.4(B).

I would hold that the disallowed question in this case sought to elicit "circumstances surrounding the offense," id., and was relevant, whether Kearney would have answered affirmatively or negatively.  The majority opinion fails to reach the merits of the case by erroneously imposing a proffer requirement for an inquiry that required no proffer.  In Craig v. Commonwealth, 14 Va. App. 842, 419 S.E.2d 429 (1992), we held that "failure to proffer the anticipated evidence does not bar [in every circumstance] our consideration of its admissibility."  Id. at 845, 419 S.E.2d at 431.  As in Craig, "the nature of [Kearney's] response to the question [is] not critical" to our determination whether Kearney was prejudiced by the trial judge's decision.  Id.  The absence of a proffer of the expected answer is irrelevant to the issue whether error occurred and whether we can decide this appeal.  For these reasons and as fully discussed in the prior panel opinion, see Kearney v. Commonwealth, 32 Va. App. 790, 531 S.E.2d 23 (2000), I would hold that the trial judge erred in denying Kearney the opportunity to respond to this question about "'the circumstances surrounding the offense' from his perspective."  Id. at 794, 531 S.E.2d at 25.  As the prior panel decision noted, "nothing could be more germane and relevant to sentencing

than the extent of the defendant's involvement in planning or his participation in a crime."  Id.

Furthermore, it appears that the nature of Kearney's response is contained in the record.  At allocution, he stated, "If I had any idea any shooting was going to be involved, I would have never been in the car."  Although Kearney did not offer this evidence as a formal proffer, it is responsive to the question and is a part of the record.  We have previously held that a proffer may be made "after the verdict since the proffer [is] necessary only to provide a complete record for appeal, and not to assist the trial judge in ruling on the admissibility of the evidence."  Lowery v. Commonwealth, 9 Va. App. 304, 308, 387 S.E.2d 508, 510 (1990).  See also Wyche v. Commonwealth, 218 Va. 839, 843, 241 S.E.2d 772, 775 (1978).  Kearney's statement clearly describes circumstances surrounding the offense in a manner favorable to him and, therefore, its disallowance prejudiced him.

Non-constitutional error is harmless only "[w]hen it plainly appears from the record and the evidence given at the trial" that the error did not affect the jury's sentence.[2]  Code § 8.01-678.  Without indicating whether it was overruling any of

_____

[2] Kearney raises no constitutional issues, see Rock v. Arkansas, 483 U.S. 44, 51-53 (1987); therefore, I address only the issue of non-constitutional error.

its prior cases, the Supreme Court of Virginia has "adopt[ed] the Kotteakos [v. United States, 328 U.S. 750 (1946),] harmless-error test" for measuring non-constitutional error under Code § 8.01-678. Clay v. Commonwealth, ___ Va. ___, ___ S.E.2d ___ (June 8, 2001). Applying that test, the United States Supreme Court recently held that "the principle of Kotteakos [means] that when an error's natural effect is to prejudice substantial rights and the court is in grave doubt about the harmlessness of that error, the error must be treated as if it had a 'substantial and injurious effect' on the verdict." O'Neal v. McAninch, 513 U.S. 432, 444 (1995) (quoting Kotteakos, 328 U.S. at 776). Moreover, when a trial error has been shown on direct appeal from a conviction, the government bears the burden of proving harmlessness under the Kotteakos standard. See O'Neal, 513 U.S. at 437-38.

In this case, the jury, as instructed, may have found Kearney guilty either as the principal gunman or as a principal in the second degree. The disallowed question presupposes that other people, who were charged in the incident, did the shooting. Refusing, in error, to admit the answer to the question could only be harmless if we could somehow conclude that during the guilt phase the jury found that Kearney held the gun. Indeed, then and only then could the issue of "residual doubt," as discussed in Atkins v. Commonwealth, 260 Va. 375,

381, 534 S.E.2d 312, 316 (2000), arise, because only then would the defense be reintroducing the issue of the gunman's identity.

Assuming the jury believed that Kearney was a principal in the second degree, the trial judge's decision to exclude Kearney's testimony about his understanding of other people's intentions prejudiced his right to prove mitigating evidence and clearly "had substantial and injurious effect" on the jury's consideration of his sentence. Kotteakos, 328 U.S. at 776. If believed, Kearney's testimony was significant mitigating evidence. Because we have no basis to know which theory the jury applied in its finding of guilt, we cannot conclude, in the context of the entire record, that the error did not influence the jury. The record fails to establish that the error did not prejudicially affect the jury's sentencing verdict. Thus, I would hold that it does not plainly appear that the error did not substantially and injuriously affect the sentence and that the excluded evidence, if successful in achieving its purpose, clearly would have affected the verdict. See Norfolk Ry. & Light Co. v. Corletto, 100 Va. 355, 360, 41 S.E. 740, 742 (1902) (holding that "[i]t is . . . well settled that if a . . . mistake of the court appear[s] in the record it must be presumed that it affected the verdict of the jury, and is therefore ground for which the judgment must be reversed, unless it plainly appears from the whole record that the error did not affect, and could not have affected, their verdict").

Accordingly, I would reverse and vacate the judgment sentencing Kearney to thirty-two years in prison for second degree murder, and I would remand for re-sentencing.

I dissent.